**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 23-5017**

# United States Court of Appeals
# for the District of Columbia Circuit

_____

NATIONAL SECURITY ARCHIVE,

*Appellant,*

v.

CENTRAL INTELLIGENCE AGENCY,

*Appellee.*

_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02857-JEB
District Judge James E. Boasberg

_____

**REPLY BRIEF FOR APPELLANT NATIONAL SECURITY ARCHIVE**
_____

John S. Guttmann
Hilary T. Jacobs
BEVERIDGE & DIAMOND, P.C.
1900 N Street, N.W., Suite 100
Washington, DC 20036
(202) 789-6000
jguttmann@bdlaw.com
hjacobs@bdlaw.com

*Counsel for Appellant National Security
Archive*

June 21, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY OF ABBREVIATIONS ....................................................iv

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

ARGUMENT ...................................................................................2

      I.     CIA's Involvement in This Unique, Statutorily Mandated
            Declassification Process Demonstrates Its Official
            Acknowledgment of The Transcription. ................................................2

      II.    The Law Recognizes An Independent Public Domain Doctrine. .........5

CONCLUSION .................................................................................7

# TABLE OF AUTHORITIES

## CASES

*Buzzfeed, Inc. v. Dep't of Justice*,
  344 F. Supp. 3d 396 (D.D.C. 2018) ........................................................7

*Cottone v. Reno*,
  193 F.3d 550 (D.C. Cir. 1999) ................................................. 5, 6, 7

*Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*,
  525 F. Supp. 3d 90 (D.D.C. 2021) ........................................................7

*Kleinert v. Bureau of Land Mgmt.*,
  132 F. Supp. 3d 79 (D.D.C. 2015) ........................................................6

*Knight First Amend. Inst. At Columbia Univ. v. Cent. Intelligence Agency*,
  11 F.4th 810 (D.C. Cir. 2021) ..........................................................4, 5

*Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*,
  No. 17-cv-1701, 2022 WL 1384088 (D.D.C. Oct. 21, 2022) ...............6

*Soto v. U.S. Dep't of State*,
  118 F. Supp. 3d 355 (D.D.C. 2015) ......................................................6

*Students Against Genocide v. Dep't of State*,
  257 F.3d 828 (D.C. Cir. 2001) ..........................................................5, 6

## STATUTES

22 U.S.C. § 4351(a) ...............................................................................3

22 U.S.C. § 4351(a)-(b) .........................................................................3

22 U.S.C. § 4353(a) ...............................................................................3

## OTHER AUTHORITIES

DOS Office of the Historian, <u>Toward "Thorough, Accurate, and Reliable":</u>
  <u>History of the *Foreign Relations of the United States* Series</u>, Chapter 12 .............3

Report of the Advisory Committee on Historic Diplomatic
  Documentation (2018) ...............................................................................3

## GLOSSARY OF ABBREVIATIONS

| The "Archive" | National Security Archive |
|---|---|
| CIA | Central Intelligence Agency |
| DOS | United States Department of State |
| FOIA | Freedom of Information Act, 5 U.S.C. § 552 |
| *FRUS* | DOS Foreign Relations of the United States Series |
| "Perroots Memo" | The January 9, 1989, End of Tour Report (Addendum) written by General Leonard Perroots |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Central Intelligence Agency ("CIA") has advanced no authority supporting its position that one agency's statutorily-mandated involvement in another agency's publication of information does not constitute official acknowledgement. In the absence of any such authority, the CIA continues beating the same drum—*one agency's disclosure of information does not establish another agency's official acknowledgment*. At the same time, the CIA refuses to publicly acknowledge that it played a role in the Department of State's ("DOS") publication of the document at issue—a role that equates to its own disclosure of the document. The CIA's refusal to publicly address its statutorily-mandated involvement in DOS's publication of Lieutenant General Leonard Perroots' 1989 Memorandum ("Perroots Memo") is at best, disingenuous, and at worst, misleading. The CIA simultaneously brushes aside this Court's holdings that information in the public domain—such as the text of the Perroots Memo that was published in the DOS series *Foreign Relations of the United States* ("*FRUS*")— cannot be withheld under the Freedom of Information Act ("FOIA").

The CIA's continued attempt to contradict binding caselaw by withholding a forty-year-old document—the bulk of which has been published and remains publicly available—represents a significant waste of taxpayer resources. Such a withholding would thwart future Congressionally-required *FRUS* publications and

undercut the official acknowledgment doctrine. The National Security Archive (the "Archive") respectfully requests that this Court require the CIA to release the already-public portions of the Perroots Memo.

## ARGUMENT

**I.    CIA's Involvement in This Unique, Statutorily Mandated Declassification Process Demonstrates Its Official Acknowledgment of The Transcription.**

The CIA's continued emphasis of the rule that one agency's disclosure of information does not establish another agency's official acknowledgement distracts from the underlying fact that it has not once publicly denied: the CIA was directly involved in the publication of the Perroots Memo transcription. The Archive has never asserted that the DOS officially acknowledged the Perroots Memo on behalf of the CIA, nor does it do so now. The CIA's *independent* actions taken in accordance with a Congressionally-mandated, coordinated process establish the CIA's official acknowledgment of the Perroots Memo.

Throughout this case, the CIA has consistently dodged any public discussion of its role in the transcription's publication.[1] Nowhere in the record has the CIA publicly recognized that Congress not only requires the publication of the "*Foreign*

---

[1] The Archive presumes that the CIA's classified submissions speak to this. *See* Archive Br. at 14 (ECF No. 1997396).

2

*Relations on the United States,*" but also requires national security agencies to coordinate in the publication and declassification process. 22 U.S.C. §§ 4351(a)-(b), 4353(a). Nor has the CIA acknowledged that it has its own procedures and devoted staff for this very coordination.[2] As mandated by statute, and consistent with these procedures, the CIA actively participated in publication of the *FRUS* volume at issue. *See* Archive Br. at 5–6. Permitting the CIA to gloss over its extensive involvement in this publication, and now assert that its role somehow does not constitute official acknowledgment would gut the official acknowledgment doctrine and threaten the *FRUS'*s continued, statutorily-required publication of an "accurate[] and reliable documentary record of major United States foreign policy decisions and. . . diplomatic activity." 22 U.S.C. § 4351(a). Even if there was some internal miscommunication or error involving the declassification review of the Perroots Memo, the public should know what happened.

The CIA does not cite to a case where one agency's submission of its records to another agency, and subsequent involvement in the declassification process of

---

[2] The CIA has signed two Memorandums of Understanding with DOS establishing declassification guidelines and has created a Historical Programs Staff specifically tasked with coordinating *FRUS* reviews. DOS Office of the Historian, Toward "Thorough, Accurate, and Reliable": History of the *Foreign Relations of the United States* Series, Ch. 12, *available at* https://history.state.gov/historicaldocuments/frus-history/chapter-12; Report of the Advisory Committee on Historic Diplomatic Documentation (2018), *available at* https://shafr.org/sites/default/files/2018_hac_annual_report.pdf.

those same records, is not an official acknowledgement, because no such case exists. Instead, the CIA relies solely on *Knight*—a case that is easily distinguished. *Knight* dealt with a request for records about intelligence agencies' prior knowledge of an impending threat to a Saudi journalist who was later murdered. *Knight First Amend. Inst. At Columbia Univ. v. Cent. Intelligence Agency*, 11 F.4th 810 (D.C. Cir. 2021). In response to the CIA's *Glomar* response refusing to confirm or deny whether it had responsive records, plaintiff argued that a DOS spokesman's statement in a press briefing that no responsive records existed was an official acknowledgment that precluded the CIA from making a *Glomar* response to the request. *Id.* at 814. The *Knight* court found that the DOS spokeman's comments did not count as an official acknowledgment by the CIA and, therefore, DOS's denial of the existence of certain documents did not forcelose the CIA from asserting its *Glomar* response. *Id.* at 817.

    *Knight* has limited application here for several reasons: first, unlike *Knight*, this case deals with the CIA's release of a document—not its admission of whether that document exists—and the corresponding alleged national security concerns surrounding the document's release. The Perroots Memo's transcription is publicly known to exist, unlike the information at issue in *Knight*. Additionally, the intelligence communites in *Knight* did not coordinate about DOS's statement in the press briefing, while here, it is public knowledge that the CIA collaborated with DOS in the Perroots Memo's declassification. The *Knight* court's decision rested in part

on the distinction between the public perception of what DOS says was known or not known and what the CIA says was known or not known—a distinction with no relevance here, where the agencies were known to have jointly coordinated the publication on DOS's website. *Id.* The absence of any supporting authority compelling otherwise leaves this Court with only one possible conclusion: the CIA's statutorily-mandated involvement satisfies the official acknowledgment doctrine.

## II.     The Law Recognizes An Independent Public Domain Doctrine.

The CIA fails to account for the body of case law supporting the existence of the public domain doctrine as a separate and distinct doctrine from the official acknowledgment doctrine, *see* Archive Br. at 16–18, dismissing this Court's prior holdings that an agency may not rely on an exemption where the information is (1) truly public and (2) disclosed and preserved in the public record. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001); *Cottone v. Reno*, 193 F.3d 550, 554–55 (D.C. Cir. 1999). The CIA is quick to point out that the Court in *Students Against Genocide* did not find that information was in the public domain. What the CIA ignores, however, is that, unlike here, the information at issue was not preserved in the public record: "[the photos] were not released to the general public; only the Security Council delegates saw them. In fact, the photographs were not "released" at all." *Students Against Genocide*, 257

F.3d at 836. The Perroots Memo transcription in its entirety, as well as portions thereof, live on in multiple publicly accessible locations. *See* Archive Br. at 7.

The CIA points to the absence of a case interpreting the independent public domain doctrine to necessitate the disclosure of national security information as dispositive. Yet, the CIA fails to cite a case affirmatively providing that the public domain doctrine cannot compel disclosure in the national security context. The fact that the public domain doctrine has yet to be applied in such a case does not preclude the Court from applying the doctrine in this scenario, where the Perroots Memo transcription remains preserved in the public record, including in court records and online. *See Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 366 (D.D.C. 2015) (court records constitute a permanent public record); *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 95 (D.D.C. 2015) (same); *Cottone*, 193 F. 3d at 554 (same); *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, No. 17-cv-1701, 2022 WL 1384088 at *9, n.6 (D.D.C. Oct. 21, 2022) (unpublished decision) (same, for a website archiving internet pages).

Even if the official acknowledgment and the public domain doctrines are not two clearly distinct doctrines, the case law in the lower courts provides sufficient ambiguity to warrant exploring the doctrine's application to the facts presented here. *Compare Cottone*, 193 F.3d at 554 (independent application of public domain doctrine); *Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*, 525 F.

Supp. 3d 90 (D.D.C. 2021) (same) *with Buzzfeed, Inc. v. Dep't of Justice*, 344 F.

Supp. 3d 396 (D.D.C. 2018) (conflates official acknowledgement and public

domain doctrines). If the public domain doctrine has any application, it should

apply here, where the CIA is attempting to withhold a nearly forty-year-old

document that (1) it had previously collaborated in releasing and (2) contains

information that is now preserved in the public domain.

## CONCLUSION

For all of the foregoing reasons, the Archive respectfully requests that the

Court reverse the district court's ruling and remand the case to the district court

with instructions that it require the CIA to release at least the published portions of

the Perroots Memo.

Date: June 21, 2023                    Respectfully submitted,


                                       */s/* Hilary T. Jacobs
                                       John S. Guttmann (D.C. Cir. Bar No. 35061)
                                       Hilary T. Jacobs (D.C. Cir. Bar No. 63256)
                                       BEVERIDGE & DIAMOND, P.C.
                                       1900 N Street, N.W., Suite 100
                                       Washington, DC  20036
                                       (202) 789-6020
                                       jguttmann@bdlaw.com
                                       hjacobs@bdlaw.com

                                       *Counsel for Appellant National Security*
                                       *Archive*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1.     This document complies with the type-volume limitations of Circuit Rule 32(e)(2)(B).  According to the word processing system used in this office, this document, not including sections excluded by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), contains 1,575 words.

2.     This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in proportionally spaced, 14-point Times New Roman typeface using Microsoft Word.

*/s/* Hilary T. Jacobs
Hilary T. Jacobs

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will send and serve notifications of the foregoing to all counsel of record.

*/s/* Hilary T. Jacobs
  Hilary T. Jacobs

10

# ADDENDUM

## STATUTES AND REGULATIONS

22 U.S.C. § 4351-4353 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

EFFECTIVE DATE

Section effective 180 days after Dec. 22, 1987, see section 186(b) of Pub. L. 100–204, set out as a note under section 4741 of this title.

## CHAPTER 53B—FOREIGN RELATIONS OF THE UNITED STATES HISTORICAL SERIES

Sec.
4351.  General authority and contents of publication.
4352.  Responsibility for preparation of FRUS series.
4353.  Procedures for identifying records for FRUS series; declassification, revisions, and summaries.
4354.  Declassification of State Department records.
4355.  Relationship to Privacy Act and Freedom of Information Act.
4356.  Advisory Committee.
4357.  Definitions.

## § 4351. General authority and contents of publication

**(a) Charter of publication**

The Department of State shall continue to publish the ''Foreign Relations of the United States historical series'' (hereafter in this chapter referred to as the ''FRUS series''), which shall be a thorough, accurate, and reliable documentary record of major United States foreign policy decisions and significant United States diplomatic activity. Volumes of this publication shall include all records needed to provide a comprehensive documentation of the major foreign policy decisions and actions of the United States Government, including the facts which contributed to the formulation of policies and records providing supporting and alternative views to the policy position ultimately adopted.

**(b) Editing principles**

The editing of records for preparation of the FRUS series shall be guided by the principles of historical objectivity and accuracy. Records shall not be altered and deletions shall not be made without indicating in the published text that a deletion has been made. The published record shall omit no facts which were of major importance in reaching a decision, and nothing shall be omitted for the purpose of concealing a defect of policy.

**(c) Deadline for publication of records**

The Secretary of State shall ensure that the FRUS series shall be published not more than 30 years after the events recorded.

(Aug. 1, 1956, ch. 841, title IV, §401, as added Pub. L. 102–138, title I, §198(a), Oct. 28, 1991, 105 Stat. 685.)

COMPLIANCE WITH DEADLINE FOR PUBLICATION OF FRUS SERIES; NOTIFICATION TO CONGRESSIONAL COMMITTEES ON FAILURE TO COMPLY; FINAL DEADLINE

Pub. L. 102–138, title I, §198(c)(2), Oct. 28, 1991, 105 Stat. 691, provided that:

''(A) In order to come into compliance with section 401(c) of the State Department Basic Authorities Act of 1956 [22 U.S.C. 4351(c)] (as amended by this section) the Secretary of State shall ensure that, by the end of the 3-year period beginning on the date of the enactment of this Act [Oct. 28, 1991], all volumes of the Foreign Relations of the United States historical series (FRUS) for the years that are more than 30 years before the end of that 3-year period have been published.

''(B) If the Secretary cannot reasonably meet the requirements of subparagraph (A), the Secretary shall notify the Committee on Foreign Relations of the Senate and the Committee on Foreign Affairs of the House of Representatives and describe how the Department of State plans to meet the requirements of subparagraph (A). In no event shall volumes subject to subparagraph (A) be published later than 5 years after the date of the enactment of this Act.''

## § 4352. Responsibility for preparation of FRUS series

**(a) In general**

(1)(A) The Historian of the Department of State shall be responsible for the preparation of the FRUS series, including the selection of records, in accordance with the provisions of this chapter.

(B) The Advisory Committee on Historical Diplomatic Documentation shall review records, and shall advise and make recommendations to the Historian concerning all aspects of preparation and publication of the FRUS series, including, in accordance with the procedures contained in section 4353 of this title, the review and selection of records for inclusion in volumes of the series.

(2) Other departments, agencies, and other entities of the United States Government shall cooperate with the Office of the Historian by providing full and complete access to the records pertinent to United States foreign policy decisions and actions and by providing copies of selected records in accordance with the procedures developed under section 4353 of this title, except that no access to any record, and no provision of any copy of a record, shall be required in the case of any record that was prepared less than 20 years before the date of a request for such access or copy made by the Office of the Historian.

**(b) National Archives and Records Administration**

Notwithstanding any other provision of this chapter, the requirement for the National Archives and Records Administration to provide access to, and copies of, records to the Department of State for the FRUS series shall be governed by chapter 21 of title 44, by any agreement concluded between the Department of State and the National Archives and Records Administration, and, in the case of Presidential records, by section 2204 of such title.

(Aug. 1, 1956, ch. 841, title IV, §402, as added Pub. L. 102–138, title I, §198(a), Oct. 28, 1991, 105 Stat. 685; amended Pub. L. 117–81, div. E, title LV, §5504(1), Dec. 27, 2021, 135 Stat. 2376.)

EDITORIAL NOTES

AMENDMENTS

2021—Subsec. (a)(2). Pub. L. 117–81 substituted ''20'' for ''26''.

AUTHORITY OF SECRETARY OF STATE

Except as otherwise provided, Secretary of State to have and exercise any authority vested by law in any

official or office of Department of State and references to such officials or offices deemed to refer to Secretary of State or Department of State, as appropriate, see section 2651a of this title and section 161(d) of Pub. L. 103–236, set out as a note under section 2651a of this title.

### § 4353. Procedures for identifying records for FRUS series; declassification, revisions, and summaries

**(a) Development of procedures**

Not later than 180 days after October 28, 1991, each department, agency, or other entity of the United States Government engaged in foreign policy formulation, execution, or support shall develop procedures for its historical office (or a designated individual in the event that there is no historical office)—

(1) to coordinate with the State Department's Office of the Historian in selecting records for possible inclusion in the FRUS series;

(2) to permit full access to the original, unrevised records by such individuals holding appropriate security clearances as have been designated by the Historian as liaison to that department, agency, or entity, for purposes of this chapter, and by members of the Advisory Committee; and

(3) to permit access to specific types of records not selected for inclusion in the FRUS series by the individuals identified in paragraph (2) when requested by the Historian in order to confirm that records selected by that department, agency, or entity accurately represent the policymaking process reflected in the relevant part of the FRUS series.

**(b) Declassification review**

(1) Subject to the provisions of this subsection, records selected by the Historian for inclusion in the FRUS series shall be submitted to the respective originating agency for declassification review in accordance with that agency's procedures for such review, except that such declassification review shall be completed by the originating agency within 120 days after such records are submitted for review. If the originating agency determines that any such record is not declassifiable because of a continuing need to protect sources and methods for the collection of intelligence information or to protect other sensitive national security information, then the originating agency shall attempt to make such deletions in the text as will make the record declassifiable.

(2) If the Historian determines that the meaning of the records proposed for inclusion in a volume of the FRUS series would be so altered or changed by deletions made under paragraph (1) that publication in that condition could be misleading or lead to an inaccurate or incomplete historical record, then the Historian shall take steps to achieve a satisfactory resolution of the problem with the originating agency. Within 180 days of receiving a proposed solution from the Historian, the originating agency shall furnish the Historian a written response agreeing to the solution or explaining the reasons for the alteration or deletion.

(3) The Historian shall inform the Advisory Committee of any failure by an originating agency to complete its declassification review of a record within 120 days and of any steps taken under paragraph (2).

(4) If the Advisory Committee determines that the meaning of the records proposed for inclusion in a volume of the FRUS series would be so altered or changed by deletions made under paragraph (1), or if the Advisory Committee determines as a result of inspection of other documents under subsection (a)(3) that the selection of documents could be misleading or lead to an inaccurate or incomplete historical record, then the Advisory Committee shall so advise the Secretary of State and submit recommendations to resolve the issue.

(5)(A) The Advisory Committee shall have full and complete access to the original text of any record in which deletions have been made. In the event that the head of any originating agency considers it necessary to deny access by the Advisory Committee to the original text of any record, that agency head shall promptly notify the Advisory Committee in writing, describing the nature of the record in question and the justification for withholding that record.

(B) The Historian shall provide the Advisory Committee with a complete list of the records described in subparagraph (A).

(6) If a record is deleted in whole or in part as a result of review under this subsection then a note to that effect shall be inserted at the appropriate place in the FRUS volume.

(Aug. 1, 1956, ch. 841, title IV, § 403, as added Pub. L. 102–138, title I, § 198(a), Oct. 28, 1991, 105 Stat. 686.)

#### STATUTORY NOTES AND RELATED SUBSIDIARIES

##### AUTHORITY OF SECRETARY OF STATE

Except as otherwise provided, Secretary of State to have and exercise any authority vested by law in any official or office of Department of State and references to such officials or offices deemed to refer to Secretary of State or Department of State, as appropriate, see section 2651a of this title and section 161(d) of Pub. L. 103–236, set out as a note under section 2651a of this title.

### § 4354. Declassification of State Department records

**(a) Deadline for declassification**

(1) Except as provided in subsection (b), each classified record of permanent historical value (as determined by the Secretary of State and the Archivist of the United States) which was published, issued, or otherwise prepared by the Department of State (or any officer or employee thereof acting in an official capacity) shall be declassified not later than 25 years after the record was prepared, shall be transferred to the National Archives and Records Administration, and shall be made available at the National Archives for public inspection and copying.

(2) Nothing in this subsection may be construed to require the declassification of a record wholly prepared by a foreign government.

**(b) Exempted records**

Subsection (a) shall not apply to any record (or portion thereof) the publication of which the Secretary of State, in coordination with any