# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| NATIONAL SECURITY ARCHIVE, | ) ) ) |
| *Appellant*, | ) ) Case No. 23-5017 |
| v. | ) ) ) |
| CENTRAL INTELLIGENCE AGENCY, | ) ) ) |
| *Appellee*. | ) ) ) ) ) ) |

## STATEMENT OF UNDERLYING DECISION

This appeal addresses the October 4, 2022 Order and accompanying Memorandum Opinion concerning the Central Intelligence Agency's July 27, 2022 Motion for Summary Judgment, and the November 16, 2022 Order concerning the National Security Archive's October 21, 2022 Motion for Amend Judgement. Pursuant to the Clerk's January 25, 2023 Order, Appellant National Security Archive has attached the October 4, 2022 and November 16, 2022 Orders to this filing.

Dated: February 17, 2023 	Respectfully submitted,

*/s/ Hilary Jacobs*
John S. Guttmann
Hilary T. Jacobs
BEVERIDGE & DIAMOND, P.C.
1900 N Street, N.W., Suite 100
Washington, DC  20036
(202) 789-6020
jguttmann@bdlaw.com
hjacobs@bdlaw.com

*Attorneys for Appellant National Security Archive*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will send and serve notifications of the foregoing to all counsel of record.

*/s/ Hilary Jacobs*

# ATTACHMENT OF UNDERLYING DECISIONS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL SECURITY ARCHIVE,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTRAL INTELLIGENCE AGENCY,**<br><br>Defendant. | Civil Action No. 21-2857 (JEB) |

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court ORDERS that:

1. Defendant's Motion for Summary Judgment is GRANTED; and

2. Judgment is ENTERED in favor of Defendant.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 4, 2022

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY ARCHIVE,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>Defendant. | Civil Action No. 21-2857 (JEB) |

### MEMORANDUM OPINION

In 1989, as he retired as Director of the Defense Intelligence Agency, Lieutenant General Leonard Perroots wrote a Memo documenting an unaddressed "analytical problem" for the U.S. Intelligence Community. Now, over three decades later, Plaintiff National Security Archive (NSA) would like a copy of that Memo, and it has deployed the Freedom of Information Act in its suit to obtain it. The CIA produced the document (a cover letter and accompanying Memo) in response to NSA's FOIA request, but it redacted the full text of the Memo, citing national-security and intelligence concerns. It now moves for summary judgment. NSA rejoins that notwithstanding the validity of the CIA's interests in secrecy, the Agency may not continue to withhold the Perroots Memo because (according to NSA) the Memo's text was already made public with CIA permission in a Department of State publication. Any interests in secrecy are thus moot. The Court disagrees and will accordingly grant summary judgment to the CIA.

I.  Background

On August 2, 2021, NSA, a non-governmental organization that promotes research about U.S. national-security decisionmaking processes, submitted a FOIA request to the CIA for a

1

single document: the so-called "January 9, 1989 'End of Tour Report (Addendum) General Perroots.'"  ECF No. 21-2 (Def. Statement of Undisputed Material Facts), ¶ 1 (citing ECF 21-3 (Decl. of Lauren Holm), ¶ 6).  After being met with silence from the CIA, Plaintiff filed this suit against the Agency in October of that year.  See ECF No. 1 (Compl.), ¶ 33.  The CIA located the document in December 2021, see Holm Decl., ¶ 8, and sent a letter in April 2022 telling Plaintiff that the Agency could release the document in segregable form with redactions as appropriate under FOIA Exemptions 1 and 3.  See SUMF, ¶ 5 (citing Holm Decl., ¶ 9).

    The CIA accordingly released the cover letter to the Memorandum with minor redactions but redacted the substance of the Memo in full.  See SUMF, ¶ 5 (citing ECF No. 21-4 (Redacted Perroots Memo and Cover Letter)).  The Agency concluded that the redacted information needed to be withheld because it could "reveal specific intelligence activities, sources, and methods that are either still actively in use or which remain viable for use today."  Holm Decl., ¶ 12; see also id., ¶ 19 ("The Agency protects intelligence methods that may be unclassified, but nevertheless if disclosed, would reveal sensitive intelligence sources and methods.").  Based on its "line-by-line review of the record at issue," the CIA also determined that it had segregated "all non-exempt, reasonably segregable material."  Id., ¶¶ 21–22.

    Plaintiff objects to the scope of the redactions — but not because the CIA's national-security concerns are illegitimate.  Rather, NSA maintains that the CIA may no longer plausibly assert an interest in keeping the document under wraps because the Agency already disclosed, albeit in a different form and with some redactions, the same document it is now seeking to conceal.  According to NSA, the Department of State previously published, with CIA sign-off, the transcribed text of the Perroots Memo with very minor redactions in Volume IV of the DOS Series "Foreign Relations of the United States" (FRUS).  See ECF No. 13 (Joint Status Report,

April 29, 2022), ¶¶ 6–7; ECF 1-2 (FOIA Request) at 28–31 (FRUS Perroots Transcript). The FRUS series "presents the official documentary historical record of major U.S. foreign policy decisions and significant diplomatic activity." Dep't of State, Off. of the Historian, "Historical Documents." Plaintiff's position is thus that "any reasons for withholding parts of the [Perroots Memo] that are public have been mooted by [its] release" in the FRUS. See Apr. JSR, ¶ 12. The CIA, of course, disagrees.

Following several procedural developments not relevant here, Defendant now moves for summary judgment.

## II. Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it can affect the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a

3

FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

**III.    Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  The statute promotes these aims by providing that "each agency, upon any [compliant] request for records[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive.  Id. § 552(b)(1)–(9).  The CIA here invokes Exemptions 1 and 3, which respectively exempt materials "authorized . . . by an Executive order to be kept secret in the interest of national defense or foreign policy" and materials "specifically exempted from disclosure by statute." Id. § 552(b)(1), (3).

4

This Court has spilled much ink in prior Opinions over the scope of those exemptions. Unlike in many FOIA cases, however, the exemptions play but a supporting role here. Plaintiff concedes that "in an alternate universe" — that is, one where the text of the Perroots Memo has not purportedly been released into the public domain — the exemptions that the CIA "claims protect the disputed document could arguably have been properly applied." ECF No. 25 (Plaintiff Opposition to MSJ) at 1. But, NSA contends, we are not in such a universe. On our planet, "CIA has signed off on the declassification and release of the disputed document" in a DOS publication and has thus "waived the right to claim any exemption over at least the published portions of the document." Id.

The focus of this dispute is therefore the effect of the FRUS publication on the CIA's ability to invoke any FOIA exemptions. Plaintiff puts forth two reasons why the CIA may not rely on those exemptions here: first, under Circuit precedent, the disclosure of information that an agency has "officially acknowledged" may be compelled over objection, see Opp. at 6–10; second, and relatedly, even in the absence of any official acknowledgment, the CIA must explain with far more specificity than it has why the already-public portions of the Perroots Memo should continue to be withheld. Id. at 10–12.

The Court will take each theory in turn.

A. Official Acknowledgment

The official-acknowledgment doctrine provides that "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." ACLU v. CIA, 710 F.3d 422, 426 (D.C. Cir. 2013). "To establish official acknowledgment, a plaintiff must identify information in the public domain that (1) matches the information requested, (2) is as specific, and (3) has been

5

made public through an official and documented disclosure . . . [by] the Agency from which the information is being sought." Knight First Amend. Inst. v. CIA, 11 F.4th 810, 815–16 (D.C. Cir. 2021) (internal quotations omitted).

According to NSA, the so-called transcript of the Perroots Memo in Volume IV of the FRUS satisfies all three criteria. Plaintiff asserts that information in the DOS publication both matches, and is as specific as, the requested information. See Opp. at 7. It submits, moreover, that the CIA must have formally "signed off on the declassification of the text of the Perroots Memo" for it to appear in the FRUS. Id. at 8. This is so because DOS is required by statute to submit any records selected for inclusion in the FRUS series "to the respective originating agency for declassification review in accordance with that agency's procedures for such review." 22 U.S.C. § 4353(b)(1); Opp. at 8. That agency here was the CIA, id. at 8, which has a "Historical Programs Staff specifically tasked with coordinating [FRUS] Series reviews." Opp. at 3. Plaintiff also points out that "the preface to Volume IV thanks CIA staff for 'arranging full access to CIA records.'" Id. (citing FOIA Request at 15–18 (Preface to FRUS Vol. IV) at 17). In sum, all signs suggest that "the text of the Perroots Memo could not have made it into [] Volume IV without . . . CIA's cooperation and involvement." Id. And that, Plaintiff submits, must mean that the CIA officially acknowledged the portion of the Perroots Memo that was published in the FRUS. Id. at 9.

While NSA recognizes that courts "do not deem official a disclosure made by someone other than the agency from which the information is being sought," Knight First Amend. Inst., 11 F.4th at 816 (internal quotations omitted), it also points out that "a disclosure by one component of an executive department may bind another component within the same department." Id. at 817 (internal quotations omitted). Plaintiff here maintains that the decision of the "CIA's

6

dedicated FRUS Series declassification staff" to permit publication of the Memo in the FRUS was a decision on behalf of the entire agency. See Opp. at 9.

The CIA has a rebuttal. In response to NSA's arguments, the Agency submitted supplemental, classified, *ex parte*, *in camera* declarations, including one from Vanna Blaine, an officer in the Litigation Information Review Office, and one from Donald J. Blersch, the Senior Coordinator of the Diplomatic Security Service for Security Infrastructure in the Bureau of Diplomatic Security from the State Department. Blaine's declaration, for instance, "elaborat[es] the CIA's role in the classification review process" for Volume IV of the FRUS. See ECF No. 27 (Defendant Reply) at 2–3. "The declaration also explains why the CIA cannot further address this issue on the public record." Id. at 3.

The Court has reviewed the Government's classified, *ex parte* declarations, along with a copy of the requested Memo. Having done so, it concludes that the transcript contained in Volume IV was not made public through an "official and documented disclosure" by the CIA. The Government's declarations confirm that the CIA — and this includes the agency and its "components" — was not properly involved in the document's disclosure. Plaintiff's failure to show that the third precondition of the official-acknowledgment doctrine was satisfied is enough to render the doctrine inapplicable here. The Court therefore need not address whether the first two requirements of sameness and specificity are satisfied.

The Court is acutely aware of the frustration its admittedly cryptic analysis may engender. But FOIA requires it to remain parsimonious in its explanation, lest it "pry[] loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods." Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983). The Court assures NSA, however, that the CIA has sufficiently shown its lack of

7

involvement in the FRUS publication and supported that position with declarations that must be accorded "a presumption of good faith." SafeCard, 926 F.2d at 1200.

    B.  Public Domain

Plaintiff next contends that notwithstanding who disclosed the material that ended up in the FRUS, the CIA must still explain why it continues to withhold information that is already public. See Opp. at 11. Defendant, for its part, submits that not just any public disclosure suffices to waive a FOIA exemption or weaken its applicability; rather, as the official-acknowledgment doctrine provides, only those public disclosures that are "officially" made public affect an agency's ability to invoke an exemption. See Reply at 3. In other words, Defendant's position is that there is no "public disclosure" exception that exists separate from the "official acknowledgment" exception.

This Court need not resolve whether public disclosure of a document via unofficial channels could ever suffice to waive an agency's ability to invoke a FOIA exemption. All NSA requests in this case is a "'specific explanation for continued withholding of information' that has been made public, even when the public information was released unofficially." Opp. at 11 (quoting Washington Post v. Dep't of Def., 766 F. Supp. 1, 10 (D.D.C. 1991)) (emphasis added). The CIA has provided that to the Court here.

Once again, the Court begs Plaintiff's indulgence, as it must be vague. It assures NSA, based on its review *in camera* of the documents, that the Agency has diligently explained in those declarations why it must continue to withhold the contents of the Perroots Memo despite the FRUS publication, and it has done so with specific reasons and support. The Court's confidence is buttressed by the fact that it must give "substantial weight" to the CIA's declarations "concerning the details of the classified status of the disputed record because the

8

Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of a particular classified record." Larson, 565 F.3d at 864 (quoting Ctr. for Nat'l Sec. Studs. v. Dep't of Just., 331 F.3d 918, 927 (D.C. Cir. 2003)).  The CIA has sufficiently explained why classification of the information is still warranted to protect "intelligence activities" or "intelligence sources or methods."  MSJ at 6.

\* \* \*

Having dispensed with Plaintiff's general objections to withholding here, the Court is left with the CIA's reliance on Exemptions 1 and 3.  As Plaintiff does not contest the applicability of those exemptions on their merits, summary judgment for Defendant is appropriate.

**IV.  Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 4, 2022

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL SECURITY ARCHIVE,

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

Civil Action No. 21-2857 (JEB)

## ORDER

Last October, Plaintiff National Security Archive brought a Freedom of Information Act suit to compel Defendant Central Intelligence Agency to disclose a Memo written by now-deceased Lieutenant General Leonard Perroots. This Court ultimately issued a separate Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment, which Plaintiff now moves to amend. According to NSA, the Court's Order "sanction[ed] a reclassification" of a Memo that was effectively declassified by its release in the Department of State's "Foreign Relations of the United States" series early last year. See ECF No. 31-1 (Motion to Amend) at 1–2. Plaintiff therefore requests that the Court "require Defendant to subject the Perroots Memorandum to a reclassification review under Executive Order No. 13526," which governs agency efforts to reclassify certain information. Id. at 1. The Court will deny the Motion.

Plaintiff invokes § 1.7(c) of that Executive Order, which provides that "[i]nformation may not be reclassified after declassification and release to the public under proper authority unless" four conditions are met, including that "the information may be reasonably recovered

without bringing undue attention to the information." 75 Fed. Reg. 705, 710–11 (2010) (emphasis added). Central to this Court's October Opinion, however, was its conclusion that the Perroots Memo was not released to the public under proper authority. Nat'l Sec. Archive v. CIA, No. 21-2857, 2022 WL 5062523, at *3–4 (D.D.C. Oct. 4, 2022). It is therefore not clear that the specific requirements Plaintiff seeks to enforce here are applicable to the Perroots Memo.

In any event, this Court doubts that it has the authority under FOIA to order the relief that NSA seeks in its Motion. See ECF No. 32 (Opposition to Motion) at 2. FOIA gives district courts the "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Plaintiff's Motion, conversely, requests a very different type of injunction: compliance with procedures outlined by Executive Order 13526, a source of law separate from FOIA. NSA identifies no authority under which this Court could order such compliance from an agency in a FOIA suit.

Finally, even if NSA had identified such authority, a Rule 59(e) motion would be an improper vehicle by which to ask the Court to use that power in this case. Rule 59(e) permits a court to amend a judgment in light of an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Plaintiff's request does not fall into any of those categories. NSA brought this suit to obtain an injunction ordering "Defendant to promptly disclose" the Perroots Memo, which is relief that the Court could have ordered under FOIA. See ECF No. 1 (Complaint) at 9; 5 U.S.C. § 552(a)(4)(B). This Court declined to issue such an injunction, however, and upheld the CIA's invocation of FOIA Exemptions 1 and 3. Nat'l Sec.

2

Archive, 2022 WL 5062523, at *5.  Having lost the battle under FOIA, NSA may not now wield Rule 59(e) to seek an entirely new remedy under a separate set of requirements.

    For these reasons, the Court ORDERS that Plaintiff's Motion to Amend the Judgment is DENIED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 16, 2022

3